THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

ROBERT JONES, 51354-037
PO BOX 6000
GLENVILLE, WV 26351,

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUL 07 2020
AT _____ O'CLOCK
John M. Demurad, Clerk - Albany

Plaintiff,

V.

JANE DOE #1 (known as K. Sorrell)
in her personal and official capacity
PO BOX 900
RAYBROOK, NY 12977,

and

JANE DOE #2 (known as S. Orman)
in her personal and official capacity
PO BOX 900
RAYBROOK, NY 12977,

Defendants.

COMPLAINT FOR EQUITABLE RELIEF
AND FOR DAMAGES

①

# I. PARTIES

1. Jones is an individual who is currently incarcerated at FCI Gilmer, PO Box 6000 Glenville, WV 26351.

2. Sorrell is an individual who, upon information and belief, is a citizen of the State of New York. Sorrell is a Nurse Practitioner at FCI Raybrook, PO Box 900, Raybrook, NY 12977. She is an employee of the Federal Bureau of Prisons (FBOP).

3. Orman is an individual who, upon information and belief, is a citizen of the State of New York. Orman is a Nurse Practitioner at FCI Raybrook, PO Box 900 Raybrook, NY 12977. She is an employee of the FBOP.

# II. JURISDICTION AND VENUE

4. This action seeks relief under the: Declaratory Judgment Act, 28 U.S.C. 2201; Administrative Procedures Act, 5 U.S.C. 701, et seq.; Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971); Federal Tort Claims Act, 28 U.S.C. 1346, et seq.; this Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 because this action arises under the laws of the United States.

②

5. Venue is proper in this Court pursuant to 28 U.S.C. 1391(e) because this action is against an agency and officer of the United States, and a substantial part of the events giving rise to the claims alleged herein occurred in this district.

## IV. FACTS

6. On May 19, 2018, Jones was playing basketball at FCI Raybrook when he felt and heard a distinct "pop" in his right heel. He immediately felt pain, the area became swollen, and he could not bear his own weight.

7. Jones was carried to the prison's Health Services Unit (HSU) where an ambulance transported him to a local hospital.

8. At the hospital, Jones was diagnosed with a "rupture of right achilles tendon". He was placed in a leg splint and ordered to have surgical repair two weeks later. On June 4, 2018, Jones underwent surgery whereby Dr. Daniel Bullock successfully repaired his ruptured tendon.

9. Due to his status as an inmate, upon release from the hospital, Jones was handcuffed, chained, and shackled for the return trip to the prison. Jones was not permitted nor able do

③

carry any property or paperwork including any discharge paperwork. All paperwork was given directly to the prison guards escorting him, Jones was never given an opportunity to review the discharge paperwork.

10. Upon his return to the prison, an individual at HSU unenthusiastically asked how he felt and then quickly sent him to his housing unit. No discussion regarding any discharge instructions took place.

11. Jones experienced tremendous pain in the days following surgery. He sought help from the HSU, expressly informing Orman of pain in his calf and behind his knee—an area not affected by the surgery to his heel.

12. In response to Jones' pain complaints, of which he submitted multiple times, Orman instructed him to purchase pain medication from the commissary. Upon information and belief, Jones' complaints were never relayed to his treating physician—Dr. Bullock.

13. As the pain increased, Jones reiterated his concerns to Orman. She insisted the pain was a result of the manipulation of the leg during surgery. Orman did not perform any further examination on Jones, nor did she inquire as to adherence to discharge instructions.

(4)

14. Two weeks later, Jones was returned to Dr. Bullock for a routine post-operation follow-up consult. When Jones informed Dr. Bullock of the pain in his leg, the Doctor immediately became visually distressed. The Doctor performed a basic physical examination and then quickly rushed Jones into an emergency ultrasound session.

15. The ultrasound identified a serious Deep Venas Thrombosis (DVT), also known as a blood clot, in Jones' leg.

16. Dr. Bullock was extremely upset and inquired as to who Jones had informed that he was in pain because per the Doctor, whomever was informed, had failed to properly identify the life-threatening blood clot.

17. Dr. Bullock asked if Jones was taking the proscribed medication. Dr. Bullock stated the Aspirin prescription along with an express warning to watch out for pain due to possible blood clots was given to the prison staff. Dr. Bullock specifically stated; the "jail was aware about the Aspirin".

18. As a result of the DVT, Jones had to endure several painful shots in his stomach and was placed on blood-thining medication.

19. Jones was subsequently transferred to FCI Gilmer. He has not received any of the prescribed physical therapy.

20. On June 25, 2018, Jones commenced the FBOP Administrative Remedy Program. In response to his BP-8, the FBOP fraudulently stated: "You were given discharge instructions by the hospital to take aspirin daily. Aspirin per [FBOP] policy is purchased from the commissary. The response fraudulently represented FBOP policy. 28 CFR 549.30 provides for HSU staff do supply over-the-counter medication "if the inmate does not already have the OTC medication". All of Jones subsequent remedy requests were denied.

21. In November 2019, Jones submitted a Form 95 Tort Claim do the Northeast Region of the FBOP. The Claim was denied in May 2020.

## V. ALLEGATIONS

22. Sorrell reviewed Jones' discharge paperwork as evidenced by her physical signature on the documents, thus she was aware of his serious medical condition which included the obvious concern for blood clots.

23. Jones' Hospital Progress Notes, reviewed by Sorrell, expressly identified the concern of a post-surgery blood clot. The June 5th Note assessed: "DVT prophylaxis with aspirin"; and "Aspirin 325 p.o. daily" establishing a plan to treat a possible life-threatening blood clot with a prescription for Aspirin.

24. Jones' Patient Discharge Summary from June 5th, reviewed by Sorrell, but not provided to Jones at the time, expressly stated: "Start taking these medications... Aspirin (Ecotrin) 325 MG TAB EVERY DAY @ 900". Sorrell, nor any other FBOP staff, advised Jones that Aspirin was prescribed or that the medication was required to prevent post-surgery blood clots.

25. Sorrell, nor any other FBOP staff, provided Jones with the prescribed medication.

26. Sorrell, as a trained medical provider, reviewed Jones' discharge paperwork. She was aware of the blood clot concern, thus she was aware that a failure to administer prescription medication would cause serious harm to Jones.

27. After surgery, Jones was seen by Orman almost every day. Jones complained of extraordinary pain on a daily basis. Orman failed to review Jones' medical records which would have alerted the medical provider to the grave concern of blood clot formation.

28. For several weeks, Orman neglected to properly address Jones' daily complaints of pain. Instead, Orman instructed Jones to buy Ibuprofen from the commissary.

⑦

29. On June 18, 2018, Jones emailed Sorrell advising her that he was "in extreme pain" and that Orman was not addressing his medical concerns. No response was received.

30. As an incarcerated person, Jones relied on Sorrell and Orman to protect him from unreasonable harm and to provide reasonable medical care. Their failure to provide him with adequate medical care obstructed his ability to access medical care.

31. Sorrell and Orman's failure to protect Jones caused a life-threatening blood clot to form in his leg which caused extreme physical pain and mental anguish.

32. The denial of Jones Administrative Remedy requests and his Tord Claim was arbitrary, capricious, and not supported by the facts.

## VI. RELIEF REQUESTED

Jones requests that judgment be entered against Defendants, and the Court grant the following:

a) An order and judgment declaring:

1. Defendants were deliberately indifferent to Jones' serious medical condition, which violated his right to be free from

⑧

Cruel and unusual punishment guaranteed by the U.S. and New York Constitutions;

2. Pursuant to the U.S. and NY Constitutions, Defendants' conduct violated Jones' protected liberty interest to procure necessary medical care;

3. Defendants' negligent conduct harmed and intentionally inflicted emotional distress on Jones; and

4. The denial of Jones' Administrative Remedy requests and Tort claim was unlawful, arbitrary and capricious, and not supported by the facts.

(b) An order and judgment enjoining:

1. The further violation of Jones' right to adequate medical care; and

2. The further violation of Jones' right to due process.

(c) Nominal damages;

(d) All other relief as may be just and proper.

Jones requests a trial by jury.

Respectfully submitted on June 1, 2020.

⑨

Robert Jones

Robert Jones
51354-037
FCI Gilmer
PO Box 6000
Glenville, WV 26351

## DECLARATION

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in the above complaint is true and accurate. This complaint was placed in the prison mailbox at FCI Gilmer on June 1, 2020.

Executed at Glenville, WV on June 1, 2020.

Robert Jones
Robert Jones

(10)