UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT JONES,

    Plaintiff,

v.                                        Civil Action No. 9:20-cv-757

UNITED STATES OF AMERICA
c/o U.S. Attorney
445 Broadway, Rm 218
Albany, NY 12207,

KIMBERLY SORRELL
PO Box 900
Raybrook, NY 12977,

STEVE ORMAN
c/o BOP Northeast Regional Office
U.S. Custom House
7th Floor
Philadelphia, PA 19106,

JOHN MANENTI
PO Box 900
Raybrook, NY 12972,

R. ADKINS
201 FCI Lane
Glenville, WV 26351,

R. WOLFE
201 FCI Lane
Glenville, WV 26351,

    Defendants.



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUN - 6 2022
AT_____ O'CLOCK
John M. Domurad, Clerk   Syracuse

FIRST AMENDED COMPLAINT

I. PARTIES

1.    Pursuant to FRCivP. 10(c), paragraphs 1-3 of ECF 1 are incorporated as if set forth herein. The non-government defendants are added in their individual and official capacities.

1

2.    Manenti is a physician who was employed at FCI Raybrook at the time of the events alleged herein. Upon information and belief, he is a citizen of the State of New York and maintains a business address at PO Box 900 Raybrook, NY 12977.

3.    Adkins is a Lieutenant who is currently employed at FCI Gilmer. Upon information and belief, he is a citizen of the State of West Virginia and maintains a business address at 201 FCI Lane  Glenville, WV 26351.

4.    Wolfe is the Warden at FCI Gilmer. Upon information and belief, he is a citizen of the State of West Virginia and maintains a business address at 201 FCI Lane Glenville, WV 26351.

## II. JURISDICTION AND VENUE

5.    This action seeks relief under: 28 U.S.C. §§ 2201; 1331; 1346; and 5 U.S.C. § 701, et seq. This action is <u>not</u> brought under <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

6.    Venue is proper in the NDNY pursuant to 28 U.S.C. § 1391(b)(2); § 1402(b).

## III. FACTS

A. Events at FCI Raybrook

6. Pursuant to FRCivP. 10(c), paragraphs 6-10 of ECF 1 are incorporated as if set forth herein.

7.    Upon information and belief, the hospital staff where Jones' surgery

2

was performed, specifically gave instructions to BOP Health Services Staff—including Orman, Sorrell, and Manenti—to be alert for signs of post-operative blood clots.

8.   Three days after surgery, Jones advised Health Services ("HSU") employee Sturgen that he had pain in his leg outside of the surgical site. Defendant Dr. Manenti was notified of the encounter. Neither Sturgen nor Manenti took action to rule out the potential of a blood clot.

9.   The next day, Jones advised Orman that he had "stabbing" pain in his leg outside of the surgical site. Dr. Manenti was notified of the encounter. Neither Orman nor Manenti took action to ensure the pain was not due to a blood clot.

10.  Days later, Sorrell was advised by Jones of the substantial "chronic" pain in his leg. Manenti was again notified of the encounter yet did not take any action.

11.  Later that day, Jones advised HSU employee Peck of his substantial pain. Sorrell and Manenti were both notified of the encounter yet failed to react to ensure the pain was not due to a blood clot.

12.  Five days later, Jones sent an email to Sorrell complaining of "extreme pain" and advised the conservative treatment plan made the pain "actually worse".

13.  On June 19, 2018, Jones was returned to his surgeon for a routine post-op follow up. When Jones informed his surgeon (Dr. Bullock) of the pain in his leg, the Doctor immediately became visually distressed and rushed Jones into an emergency ultrasound session which identified a Deep Veinous Thrombosis (DVT) in Jones' leg.

3

14. Dr. Bullock was extremely upset and inquired as to who Jones had informed that he was in pain because whomever was informed at the prison failed to properly identify the signs of a life-threatening blood clot.

15. Dr. Bullock confirmed that the HSU staff at the prison were given an express warning to watch out for pain due to possible blood clots.

16. As a result of the DVT, Jones had to ensure several painful shots in his stomach and was placed on blood thining medication.

17. Despite the BOP regulation that requires Jones to be transferred to a Medical Referral Center, he was subsequently transferred to FCI Gilmer where he has not received any of the prescribed physical therapy.

18. Jones filed grievances pursuant to the BOP Administrative Remedy Program, see ECF 26, Dague Dec., Ex. C (Tr. of Jones Depo. at 37):

Q: on this case you filed all those levels right?
A: yes
Q: And did you get results at each level?
A: No. They denied it all the way up [through the BP-11]

19. Jones filed a Form 95 Tort Claim which was denied in May 2020 (Claim No. TRT-NER-01400).

B. Events at FCI Gilmer

20. On July 31, 2021, Jones was confined to the SHU at FCI Gilmer pursuant to an Administrative Detention Order which incapacitated him in the SHU "pending an investigation for violation of Bureau regulations". Jones was charged with a Code 108, possession of a hazardous tool due to the seizure of an "electronic device resembling a micro USB card" that was located in a locker inside of Jones' cell.

4

21. Pursuant to the BOP Inmate Discipline Program, Jones was due a prompt investigation and a hearing before a finder of fact. See 28 CFR § 541.1, et seq. Jones was held in punitive conditions for 8 months without the mandated hearings and without any finding that he committed a prohibited act.

22. The BOP specifically distinguishes two levels of "status when placed in the SHU", see 28 CFR § 541.22. Administrative Detention is used to remove an inmate from general population when necessary to protect himself, the facility, or other. It is a "non-punitive" status that can only be implemented for the reasons enumerated in § 541.23. The second status—Disciplinary Segregation, can only be imposed"by a Disciplinary Hearing Officer as a sanction for committing a prohibited act". See § 541.11(b) & 541.24; the regulations create an unambiguous liberty interest in avoiding punitive Disciplinary Segregation status.

23. Administrative Detention status includes prescribed conditions of confinement to ensure living conditions are not punitive. 28 CFR § 541.31 specifies dozens of mandatory accomodations that must be provided. Disciplinary Segregation status suspends most of the specified accomodations and specifically does not allow personal property to be retained by the inmate.

24. Durinhg his SHU confinement, Jones was deprioved of the specified accomodations and his personal property. His conditions of confinement were punitive and far below the baseline for life in general population.

25. 28 CFR § 541.33 requires release from the SHU "when the reasons for your placement no longer exist". As inmates in the SHU are kept in 24-hour solitary confinement, federal regulations require intermittant reviews to provide inmates an oportunity to challenge their conditions of confinement. 28 CFR § 541.26 requires 3, 7, and repeat 30-day reviews. The reviews must include all executive staff and key prison officials, see BOP Prog. Stmt. 5270.11; 28 CFR § 5411.32(b).

5

26.   During the 8 months of punitive confinement, none of the scheduled reviews were held and Jones was unable to meaningfully challenge the conditions of his confinement.

27.   One month after being confined to the SHU, Jones was able to procure documentary evidence from a source outside the prison, that showed the item seized was a component of an Mp3 player that was sole through the prison commissary. When Jones attempted to show the evidence to Adkins, the Lieutenant threatened to "bury" him.

28.   As a result of his confinement, Jones was unable to present certain claims in this matter including: dispute of accuracy of testimony from his deposition; respond to the Defendants' dispositive motion with evidence showing dismissal was not permissible; and he was unable to conduct any discovery prior to the deadline established by the Court. Also, Jones was unable to research or hire expert witnesses to challenge the Defendants' filings.

29.   Eventually, in March 2022, another Lieutenant visiting the SHU said he would take Jones' evidence to the Disciplinary Hearing Officer (DHO). The DHO confirmed the item was from an authorized Mp3 player and authorized Jones to be released from the SHU with a lesser charge of "contraband" because the item seized was not in its original form. Jones' Case Manager told him the reduced charge would be expunged.

30.   While in the SHU, Jones requested administrative remedy forms and FTCA Form 95s from his Unit Team, and specifically requested same from Adkins on multiple occasions. All requests for remedy forms were ignored by BOP staff thus relief was made unavailable due to their actions.

31.   On May 5, 2022, R. Wolfe overzealously locked down the prison due to an isolated conflict between an inmate and a staffmember. The lockdown lasted

for two weeks during which Jones was deprived of all opportunity to exercise; shower regularly; use communication devices; access his legal material and the law library; access hygiene items and over-the-counter medications; and was forced to eat nutritionally and calorically deficient meals that were not prescribed by the BOP National Menu Plan. The lockdown was a punitive sanction imposed without the process required by 28 CFR § 541.1, et seq.

## IV. CLAIMS

### A. FTCA Claims

32. Sorrell, Orman, and Manenti each owed Jones a duty to provide for his medical care. As the sole source of medical expertise to an incarcerated individual, Defendants were required to vigilantly observe Jones' post-operative condition for signs of DVT. Defendants failed to notice the signs of a DVT, thus failed to timely treat Jones according to the applicable standard of care which required emergency intervention. The failure of Defendants caused Jones' DVT to threaten his life and caused pain and suffering during the delay and treatment.

33. Sorrell and Manenti, as supervisors to Orman, had a duty to instruct Orman to deliver proper medical care to Jones. As supervisors, Defendants were made aware of the signs of a DVT being displayed to Orman and Orman's failure to properly address the serious risk to Jones' health. Sorrell and Manenti were notifed via co-signatures in the encounter notes that Orman had failed to properly address the risk. The two supervisors, failed to correct their subordinate thus acquiesced to the negligent treatment.

34. Adkins owed a duty to protect and ensure Jones' well-being. during the

7

SHU confinement, Adkins failed to adhere to 28 CFR § 541.22 by punitively confining Jones in Disciplinary Segregation; failed to adhere to §§ 541.26; 541.32(b); BOP P.S. 5270.11 by not adhering to the required schedule of reviews; failed to adhere to § 541.31 by not maintaining living conditions that met or exceeded standards for healthy and humane treatment and denying the privileges established by the regulation; and failed to adhere to 28 U.S.C. § 1654; 28 CFR § 543.11, and BOP P.S. 1315.07 by hindering Jones' ability to meaningfully litigate.

35. Adkins conduct caused the exacerbation of Jones' Achilles heel injury; a vitamin deficiency that requires medication to remedy; atrophy of muscles; inability to submit non-frivolous claims in this Court and the inability to file a petition under § 2241 to relieve his improper sentence execution; the development of severe anxiety and mental anguish including nightmares, panic attacks, and new phobias with triggers that impair his ability to conduct his everyday lifestyle.

36. Wolfe owed a duty to protect and ensure the well-being of Jones. During the May 5th lockdown, Wolfe failed to adhere to BOP inmate discipline regulations by punitively sanctioning Jones to 24-hour cell confinement without any opportunity to exercise outside of his cell. Wolfe's conduct caused Jones' to be deprived of hjis legal material which violated 28 U.S.C. § 1654. Wolfe's conduct violated Jones' right to nutritious and healthy meals, see BOP P.S. 6013.01 and the BOP Inmate Handbook at 51. Wolfe's conduct violated Jones' right to program pursuant to 18 U.S.C. §§ 3621, 3633. Jones suffered from Wolfe's conduct through the exacerbation of his previous injuries, plus he suffered from extreme gastronomical distress due to the forced feeding of bologne three times per day.

B. Constitutional Claims

37.   Sorrell, Orman, and Manenti were aware of Jones' surgery and were made aware of the risk of a blood clot. According to Jones' surgeon, Defendants were put on notice to be observant for signs of DVT. Defendants were informed— repeatedly, that Jones' pain indicated a potential life threatening DVT yet each failed to provide the emergency care needed to treat the DVT. Defendants violated Jones' rights under the Eighth Amendment of the U.S. Constitution.

38.   Sorrell and Manenti were notified of the risk to Jones through the encounter notes entered  by Orman. Both Defendants, who were supervisors to Orman, failed to intervene to correct  the inaction of Orman thus showed tacit authorization of the failure to properly treat Jones.

39.   Adkins' conduct, as specified herein, violated Jones' rights under the First, Fifth, and Eighth Amendments of the U.S. Constitution.

40.   Wolfe's conduct, as specified herein, violated Jones' protected rights under the First, Fifth, and Eighth Amendments of the U.S. Constitution.

## V. RELIEF

FTCA Claims

41.   Jones requests the Court enter an order and judgment declaring Sorrell, Orman, and Manenti caused Jones to endure a painful existence because of the lack of  proper  treatment and then additional pain and suffering from the intense treatment needed to fix the avoidable DVT. Jones asks for an award of compensable damages in addition any other available relief.

9

42. Jones requests the Court enter an order and judgment declaring Adkins and Wolfe caused physical and mental harm to Jones. Jones asks for an award of compensable damages in addition to any other relief available.

## Constitutional Claims

43. Jones requests the Court enter an order and judgment declaring the BOP Health Services Employees (Sorrell, Orman, Manenti) violated his Eighth Amendment right by maintaining a deliberate indifference to his needed medical care. Jones asks for injunctive relief against Defendants and others similarly situated from any further violation of his right to medical care.

44. Jones requests the Court enter an order and judgment declaring BOP employees Adkins and Wolfe violated his First, Fifth, and Eighth Amendment rights by their conduct as described herein. Jones asks for injunctive relief against Defendants and others similarly situated from any further violation of his aforementioned rights.

Respectfully submitted on May 28, 2022.

Robert Jones
Plaintiff, pro se
PO Box 6000
Glenville, WV 26351

## VERIFICATION

I declare under penalty of perjury that I am over the age of 18, I have personal knowledge of the information contained in this Amended Complaint, and that the information is true and correct.

Robert Jones

10

NOTICE OF SERVICE

I declare that a copy of the foregoing Amended Complaint was served on counsel of record via First Class U.S. Mail, postage prepaid.

Robert Jones